**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

|  |  |  |
|---|---|---|

ADEOLA OSUNDE *et al.*,

      Plaintiffs,

v.                                                              Civil Case No.: PWG-11-0234

CHRISTINA E. LEWIS,

      Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM AND ORDER**

This Memorandum & Order[1] addresses Defendant Christina E. Lewis's Motion *in Limine*, ECF No. 29, which, for the reasons explained below, is construed as a motion for partial summary judgment; Defendant's Amended Motion *in Limine*, ECF No. 35; Defendant's February 17, 2012 letter explaining the corrections made to the original motion, ECF No. 36; Plaintiffs Adeola and Olubunmi Osunde's Response, ECF No. 38; and Defendant's Reply, ECF No. 43. For the reasons stated herein, Defendant's Motion *in Limine*—construed as a motion for partial summary judgment as to Plaintiffs' wrongful death claim, which is found in Count II of the Complaint, ECF No. 1—is GRANTED. Plaintiffs will not be permitted to present their wrongful death claim at trial. Instead, trial will proceed on Plaintiffs' negligence and loss of consortium claims only.[2] Accordingly, this Order disposes of ECF Nos. 29, 35, 36, 38, and 43.

---

[1] On May 10, 2011, Judge Legg referred this case to me for all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and with the parties' consent. ECF No. 15.

[2] As noted in my February 29, 2012 Letter Order, ECF No. 37, and as I describe further below, had I found that the Complaint, which did not include a survivorship count, should be construed as having done so, the granting of partial summary judgment as to Plaintiffs' wrongful death

## I.    BACKGROUND

### A.    Factual Background[3]

This case arises out of an accident that occurred on or around June 10, 2009 in the passenger-pick up area of Franklin Hospital, in Baltimore, Maryland, where Olubunmi Osunde had parked his vehicle as he waited to pick up his wife, Adeola Osunde, who was seven-months pregnant at the time, following an antenatal appointment.  *See* Compl. ¶¶ 6–7; Def.'s Am. Mot. *in Limine* ¶ 1.  As Plaintiffs were sitting in their vehicle in the pick-up area, a vehicle operated by Defendant rear-ended Plaintiffs' vehicle, causing Mrs. Osunde to fall forward.  *See* Compl. ¶¶ 8–9; Def.'s Am. Mot. ¶ 2.  Plaintiffs contend that this collision caused a tear in Mrs. Osunde's uterus, and that an emergency caesarian section was necessary to stop the excessive bleeding and to save Mrs. Osunde's life.  Compl. ¶¶ 10–12; Def.'s Am. Mot. ¶ 2.  The emergency caesarian section resulted in the premature birth of Plaintiffs' son, Joshua Osunde.  Compl. ¶ 2; Def.'s Am. Mot. ¶ 2.  Plaintiffs further contend  that Joshua Osunde's premature birth, which they maintain was caused by Defendant's negligence, resulted in his death nearly four months later, on October 8, 2009.  Compl. ¶ 13; Def.'s Am. Mot. ¶ 2.  Plaintiffs also allege that, as a result of her injuries, Mrs. Osunde "required extensive medical treatment and therapy."  Compl. ¶ 14.

---

claim for want of sufficient admissible evidence to establish causation necessarily would have required the same outcome as to any survivorship claim made on behalf of their infant son.  *See* Feb. 29, 2012 Ltr. Order 1 n.3.  Because Plaintiffs' fail to adduce sufficient evidence to support causation  as to either claim, as I note below, it is not necessary to resolve the now moot issue of whether the complaint should be construed to have included a survivorship claim.

[3] Because I construe Defendant's Motion *in Limine* as a motion for partial summary judgment, I note that, in reviewing the evidence related to a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-movant.  *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).  Therefore, unless otherwise stated, the background provided here is comprised of undisputed facts.  Where a dispute exists, however, I consider the facts in the light most favorable to Plaintiffs.

**B.     Distinguishing Wrongful Death and Survivorship Claims**

Plaintiffs filed a three-count complaint in federal court alleging negligence, wrongful death, and loss of consortium.  Compl. ¶¶ 15–31.  Plaintiffs did not plead a survivorship claim. As a result, it appears that Plaintiffs have failed to appreciate the difference between survivorship and wrongful death claims under Maryland law.[4]  Specifically, Plaintiffs have sought damages for injuries and expenses sustained by their infant son that are not recoverable in a wrongful death action.  *See, e.g.*, Compl. ¶ 25 (seeking damages for the mental and physical pain that Joshua Osunde allegedly sustained as a result of the accident); Joint Final Pretrial Order 2, ECF No. 34 (seeking damages for Joshua Osunde's pain and suffering and burial expenses).  Rather, Maryland law is clear that, with regard to their wrongful death claim, Plaintiffs only may recover for economic and noneconomic damages that they incurred as a result of the death of their infant son.  *See Smith v.  Borello*, 804 A.2d 1151, 1154 (Md. 2002) (explaining that, in a wrongful death action, a deceased victim's parent, spouse, or child "may sue, *on his or her own behalf*, for certain losses the person suffered by reason of the wrongful death of the victim" (emphasis added)); Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 399 (4th ed. 2008) ("Damages [in a wrongful death claim] are the harm caused *to the survivors* as a result of the decedent's death." (emphasis added)); *see also* Md. Code Ann., Cts. & Jud. Proc., § 3-904(d) (West 2010) (stating that, in addition to pecuniary damages, wrongful death beneficiaries may recover damages for "mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable" suffered as a result of the victim's death).  Plaintiffs may not recover for economic or noneconomic damages, including

---

[4] This case is in federal court on diversity grounds.  *See* Compl. ¶¶ 1–4.  Accordingly, Maryland substantive law applies to the merits of the case.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

pain and suffering damages and burial expenses, incurred by their infant son prior to his death under their wrongful death claim.  Any such damages must be brought by the estate of the child in a separate survivorship claim.  *See Smith*, 804 A.2d at 1154 (explaining that, in a survival action, the personal representative of the victim may sue to recover, *for the estate of the victim*, damages for the economic and non-economic losses suffered by the victim prior to his or her death—the damages that the victim would have been able to recover had he or she survived" (emphasis added)); Sandler & Archibald, *supra*, at 399 ("A survival action . . . is brought by the personal representative of the decedent's estate to recover, on behalf of the decedent and for the estate, damages (such as pain and suffering) sustained by the decedent prior to his or her death."); *Anderson v. United States*, No. AW-09-2553, 2011 WL 1231143, at *3 (D. Md. Mar. 28, 2011) ("Damages recoverable in a Maryland survival action are limited to compensation for pain and suffering endured by the deceased, his lost time, and his funeral expenses." (citing *Stewart v. United Elec. Light & Power Co.*, 65 A. 49, 53 (Md. 1906))).

Arguably, it may be possible to construe Plaintiffs' complaint under Fed. R. Civ. P. 1 as having attempted to plead both a wrongful death and a survivorship claim.  *See* Fed. R. Civ. P. 1 (requiring the Court to construe the rules of procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding").  However, as I describe below, Defendant's motion, in essence, challenges Plaintiffs' ability to establish the causation element of their wrongful death claim, and therefore is construed as a motion for partial summary judgment.  A decision that Plaintiffs have not presented sufficient admissible evidence to create a triable issue of fact regarding causation would be fatal to either a wrongful death or survivorship claim.  *See* Sandler & Archibald, *supra*, at 396 (stating that a successful wrongful death claim requires proof that death occurred and that such death was "proximately caused by the

negligence of the defendant" (citing Md. Code Ann., Cts. & Jud. Proc. §§ 3-901 – 3-904; *Weimer v. Hetrick*, 525 A.2d 643 (Md. 1987))); *id.* at 404 (stating that a successful survivorship claim requires proof that "the defendant's negligence was the direct and proximate cause of the decedent's injuries" (citing Md. Code Ann., Est. & Trusts § 7-401(x) (2001 & Supp. 2007); *Ory v. Libersky*, 389 A.2d 922 (Md. 1978))); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999) (stating that, to survive a motion for summary judgment, the non-moving party "must produce competent evidence on each element of his or her claim"). Accordingly, I first must consider the issues with causation raised in Defendant's present motion. It only will be necessary to consider whether the complaint can be construed as properly pleading both causes of action if the causation issue is resolved in Plaintiffs' favor.

### C.     Construing Defendant's Motion

In her Motion *in Limine*, Defendant seeks to "exclude from trial any and all evidence of the death of" Joshua Osunde.  Def.'s Am. Mot. 4.  Because the practical effect of excluding such evidence would be to eliminate Plaintiffs' wrongful death claim, I will construe Defendant's motion as a motion for partial summary judgment as to the wrongful death claim.  *See* Fed. R. Civ. P. 1; *see also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 792 n. 1 (D. Md. 2010) (explaining that Rule 1 instructs the Court "not [to] exalt form over substance"); *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005) (same).  I informed the parties that I intended to do so in our February 27, 2012 pretrial conference, and directed Plaintiffs to respond to Defendant's motion as if it were a motion for summary judgment, focusing, in particular on establishing that there is a genuine issue for trial regarding whether Defendant's alleged negligence caused the death of Joshua Osunde.  *See* Feb. 29, 2012 Ltr. Order 1 (memorializing discussions in the pretrial conference).  Defendant was instructed to do the same in her reply.  *See id.*

## II.     DISCUSSION

### A.     Summary of Arguments

In her motion, Defendant argues, in essence, that Plaintiffs are unable to establish a prima facie case for wrongful death, as they have offered no evidence establishing "that the child's death was causally related to the accident at issue." *See* Def.'s Am. Mot. ¶ 8. Defendant acknowledges that expert testimony "relate[s] the accident to a tear in the uterus of Plaintiff Adeola Osunde and the Caesarian operation that occurred immediately after the accident." *Id.* ¶ 11 (referencing Pls.' Resp. Ex. C, May 13, 2011 Ltr. from Julius S. Piver to Muyiwa Sobo, ECF No. 38-4 ("Piver Rep.")). Such testimony does not, however, Defendant stresses, relate the motor vehicle accident to Joshua Osunde's death. *See id.* ("[T]he child survived four more months [after the accident], and any number of factors could have proximately caused the death."). Moreover, Defendant contends, even were some evidence of causation offered, "the direct, proximate cause of the death of the child is a complex medical question requiring expert medical testimony," and Plaintiffs have offered no such testimony. *Id.* ¶¶ 5–8. Indeed, Defendant points out, Plaintiffs' expert witness, Dr. Julius Piver, M.D., testified in his deposition that he had no opinion regarding the cause of Joshua Osunde's death. *Id.* ¶ 9 (citing Def.'s Mot. *in Limine* Ex. 2, Piver Dep. 45:13–17, ECF No. 29, at 12–14 ("Piver Dep.")).

In their response, Plaintiffs provide additional information regarding Joshua Osunde's post-delivery diagnosis. Specifically, Plaintiffs state that "medical records so far provided indicate that the [c]hild was born dead," but was revived using cardiopulmonary resuscitation and other techniques. Pls.' Resp. 2–3; *see* Pls.' Resp. Ex. A., Neonatologist Report 1, ECF No. 38-2 ("Neonat. Rep.") ("Baby out wh[e]n NICU arrived. He was apneic without a heart rate. He was mask bagged . . . and then intubated . . . and given PPV . . . . Chest wall not moving, breath

sounds diminished.   Color pale. . . . He was reassessed and CPR done.").   According to

Plaintiffs, "the child only stayed alive for the 4–5 months brief period due to the CPR and the

timely medical intervention following the accident."   Pls.' Resp. 3.   Following his successful

resuscitation, Joshua Osunde was diagnosed with Respiratory Distress Syndrome ("RDS").   *Id.*;

Neonat. Rep. 1.   Without citation to the record in this case or applicable medical authority,

Plaintiffs state, in conclusory fashion, that "RDS is primarily caused by underdeveloped lungs in

premature birth."   Pls.' Resp. 3.   Plaintiffs further state, again without citation to the record, that

"[t]he cause of [Joshua Osunde's] death was given as Sudden Infant Death Syndrome

("SIDS")."[5]   *Id.*   Noting that "a child born with RDS has a greater risk of dying due to SIDS,"

Plaintiffs maintain that,   "[b]ut for the premature birth, the [c]hild would not [have been] born

with underdeveloped lungs resulting in RDS which eventually led to his death."   *Id.*   Plaintiffs

also note that Dr. Piver, their medical expert, and Dr. Zabiholla N. Lahiji, M.D., and Dr.

Georgette Bibum, M.D., the treating physicians who performed Mrs. Osunde's caesarian section,

"will testify [at trial] about the causal connections between RDS and SIDS."   *Id.*

Referring to a summary of charges produced by the hospital, Plaintiffs argue that Joshua

Osunde's "accident-induced caesarian-section delivery, still-birth, [and] resuscitation . . . set him

on what turned out to be a very involved . . . four months of medical treatment and other

procedures and his eventual death."   *Id.*   (citing Pls.' Resp. Ex. B, Summary of Hospital Charges,

ECF No. 38-3 ("Hosp. Charges Summ.")).   Thus, Plaintiffs contend, "the linkages [between the

motor vehicle accident and Joshua Osunde's death] are clear and unbroken beginning with the

uterine tear suffered by [his] mother . . .; the forced, premature, C-section; the delivery of the

---

[5]  Inexplicably, Plaintiffs have not provided to the Court a copy of Joshua Osunde's death
certificate, or any other document containing a statement of his cause of death.   I am left,
therefore, to take Plaintiffs' at their word that SIDS was the cause of their son's death.

[c]hild as still-birth that had to be resuscitated; the diagnosis that [Joshua Osunde] had RDS; the [c]hild's subsequent months of carefully supervised medical care, and sadly, [his] final demise." *Id.* at 4.   Put differently, Plaintiffs maintain that "the proximity of the injury to Plaintiff Adeola [Osunde] and the [c]hild's troubled birth and treatment for his injuries, are tightly[ ] connected and cannot be severed despite the Defendant's attempt to do so." *Id.*

Finally, Plaintiffs acknowledge that "Dr. Piver did not offer any testimony about the [c]hild's final death." *Id.* at 5.   Dr. Piver did, however, in Plaintiffs' view, "make the important connection between the auto accident and Plaintiff Adeola [Osunde's] injuries." *Id.*; *see* Piver. Rep. 1 ("The [motor vehicle accident] was the direct cause of the laceration of the [uterine] artery.   The bleeding from the lacerated artery was the direct cause of the hemoperitoneum.   The hemoperitoneum was the direct cause of the emergency cesarean section.   The premature delivery of the infant was a result of the [motor vehicle accident]."); Piver Dep. 45:5–12 (same). Moreover, Plaintiffs state that "Dr. Piver is prepared to offer an opinion specific to the issue of RDS and its fatal connection with SIDS," noting that Dr. Piver is "well qualified to opine on [this] subject . . . based on his education and training, including his authorship of the highly relevant, scholarly article *Trauma and the Female Reproductive System in Pregnancy*."   Pls.' Resp. 5 (referencing Pls.' Resp. Ex. D, Piver Article, ECF No. 38-6 ("Piver Art.")).   In light of this evidence, Plaintiffs maintain that a genuine issue of material fact exists as to causation, and that the wrongful death claim should be decided at trial.   *See* Pls.' Resp. 6–7.

In her reply, Defendant notes that Joshua Osunde "died at home," nearly two months following "his last overnight stay in a hospital."   Def.'s Reply ¶¶ 10–11.   As a result, Defendant maintains, this "is not a simple causation issue."   *Id.*¶ 11.   Defendant also notes, with citation to

various online sources,[6] that infants born at 32 weeks, such as Joshua Osunde, have a high survival rate, *see id.* (citing Krissi Danielsson, *Premature Birth and Viability: At What Point in Pregnancy Can a Baby Survive Premature Birth?*, About.com Miscarriage/Pregnancy Loss (Aug. 15, 2008), http://miscarriage.about.com/od/pregnancyafterloss/a/prematurebirth.htm; Altha Roberts Edgren, *Information: Prematurity*, Preemie Info (Mar. 24, 2001), http://preemie.info/cms/modules/news/article.php?storyid=96), and that SIDS is defined as "'the sudden death of an infant under one year of age which remains *unexplained* after a thorough case investigation, including performance of a complete autopsy, examination of the death scene, and review of the clinical history," *id.* (emphasis in original) (citing *What Is SIDS?*, American SIDS Institute, http://www.sids.org/ndefinition.htm (last visited Mar. 12, 2012)).   Thus, Defendant contends, "expert testimony is needed to make the causal connection between the premature birth and the 'unexplained' death of a child that certain should have survived statistically." *Id.*

---

[6] My ruling does not rely on evidence contained in Defendant's Internet citations.   I note, however, that citation to unauthenticated websites as support for a party's legal arguments may be problematic.   *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 555–56 (D. Md. 2007). Some courts have expressed significant skepticism at the reliability of information obtained from the Internet.   *See, e.g.*, *Trademark Properties, Inc. v. A&E Television Networks*, No. 2:06-cv-2195-CWH, 2008 WL 4811461, at *2 n. 2 (D.S.C. Oct. 28, 2008) ("The accuracy and reliability of information from the Internet is highly questionable."); *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774–75 (S.D. Tex. 1990) ("While some look to the Internet as an innovative vehicle for communication, the Court continues to warily and wearily view it largely as one large catalyst for rumor, innuendo, and misinformation.").   Other courts have taken a more permissive approach.   *See, e.g.*, *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1153–54 (C.D. Cal. 2002); *cf. United States v. Cameron*, 762 F. Supp. 2d 152, 161 (D. Me. 2011) (noting that, in terms of reliability, "the on-line world has matured" in recent years).   I need not choose between these two extremes.   I merely note that Defendant has failed to authenticate these sources, as required by Fed. R. Evid. 901(a), or provide facts to show that they can be authenticated at trial.   Moreover, I am not able to take judicial notice of these sources because the content of the websites do not deal with facts that are generally known within the territorial jurisdiction of this Court, or which have been shown to be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.   *See* Fed. R. Evid. 201(b).   Accordingly, I will not consider the websites' content in this decision.

**B.        Federal Rule of Civil Procedure 37**

In their response to Defendant's motion, Plaintiffs suggest that Dr. Piver, who "offered no evidence or testimony as to whether the Child's death was causally related to the accident" in his deposition, Pls.' Resp. 4, will testify at trial regarding the causal connection between the motor vehicle accident and Joshua Osunde's death, *see id.* at 5 ("Dr. Piver is prepared to offer an opinion specific to the issue of RDS[, the condition with which Joshua was allegedly diagnosed immediately upon birth] and its fatal connection with SIDS[, the condition Plaintiffs allege caused the untimely death of Joshua Osunde].").   As explained below, Federal Rule of Civil Procedure 37(c)(1) would bar the use of such testimony, both at trial and in briefing the present motion.  *See Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 622–23 (D. Md. 2008) ("Evidence offered to rebut a summary judgment motion may be excluded under Rule 37(c)(1) . . . if the non-moving party has failed to provide the opposing party with proper disclosures and supplements as required by Rule 26(a) and (e).").   For this reason, I instructed the parties in a previous letter order that they should cite only to material—including documentary, deposition, interrogatory, or other evidence—that had already been produced in discovery in briefing the present motion.  Feb. 29, 2011 Ltr. Order ¶ 3.

Fed. R. Civ. P. 26(a)(2) requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  The disclosure requirement is designed to afford opposing parties "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."   Fed. R. Civ. P. 26 Advisory Committee Note (1993).  If the witness is "retained or specially employed to provide expert testimony in the case or [his] duties as the party's employee regularly involve giving expert testimony," unless

otherwise stipulated or ordered, a written report prepared and signed by the witness must accompany this disclosure. Fed. R. Civ. P. 26(a)(2)(B). Pertinently, the report must contain "a complete statement of *all* opinions the witness will express and the basis and reasons for" those opinions, and "the facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii) (emphasis added); *see also* Fed. R. Civ. P. 26 Advisory Committee Note (1993) (stating that the report "should be written in a manner that reflects the testimony to be given by the witness"). Under the Scheduling Order set in this case by Judge Legg, ECF No. 10, and confirmed in my May 31 Memorandum, ECF No. 17, Plaintiffs' expert disclosures were due June 27, 2011; Plaintiffs' rebuttal disclosures were due August 8, 2011. Sched. Order 2; *see also* Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures at the times and in the sequence that the court orders."); Fed. R. Civ. P. 16(b)(3) (noting that the scheduling order may "modify the timing of disclosures under Rules 26(a) and 26(e)(1)); Fed. R. Civ. P. 26 Advisory Committee Note (1993) ("Normally the court should prescribe a time for [expert] disclosures in a scheduling order [made] under Rule 16(b)."). Dr. Piver's report is dated May 13, 2011, well in advance of these deadlines. The report, however, does not express an opinion on the causal connection between the motor vehicle accident and Joshua Osunde's death. In fact, in his deposition, Dr. Piver stated that he had formed no conclusion regarding the cause of the child's death. *See* Piver Dep. 45:13–15. Because he expressed no opinion on the causal connection between the events at issue and Joshua Osunde's death four months later in his report or in his deposition testimony—the only two pieces of evidence provided to the Court— any testimony by Dr. Piver regarding such a causal connection would only be permitted if his expert disclosures had been properly supplemented. Because the parties were directed, in conjunction with the present motion, to supply the Court with only that evidence which had already been produced in

discovery, Feb. 29, 2011 Ltr. Order ¶ 3, and because Plaintiffs include no additional evidence—documentary, deposition, interrogatory, or otherwise—containing an opinion by Dr. Piver about the cause of Joshua Osunde's death, Plaintiffs presumably failed to supplement their disclosures.

Expert disclosures must be supplemented when required by Rule 26(e).  Fed. R. Civ. P. 26(a)(2)(E).   Under Rule 26(e), "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition."  Fed. R. Civ. P. 26(e)(2).  As noted, the Court has been presented with no evidence suggesting that Dr. Piver's written report or deposition testimony were supplemented to include an opinion on the causal link between the accident and Joshua Osunde's death.   I will not reopen discovery to permit Plaintiffs to supplement Dr. Piver's report or deposition, or to obtain additional evidence related to causation only days before trial.  *See Sepracor, Inc. v. Barr Pharmaceuticals, Inc.*, No. 5:08-CV-362-H(3), 2010 WL 3210720, at *2 (E.D.N.C. Aug. 9, 2010) ("[A decision] whether to reopen discovery is within the discretion of the court." (citing *Vodrey v. Golden*, 864 F.2d 28, 32 (4th Cir. 1988))).

A party's failure to comply with the disclosure and supplementation requirements is subject to serious consequences: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 26(c)(1).  Additionally, or alternatively, the Court may, on motion and after giving the noncompliant party an opportunity to be heard: (A) order that the noncompliant party pay the reasonable expenses, including attorney's fees, caused by the failure to disclose or supplement; (B) "inform the jury of the party's failure"; or (C) impose other sanctions, including those identified in Rule 37(b)(2)(A)(i)–(vi).  Fed. R. Civ. P. 26(c)(1)(A)–

(C); *see also* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi) (listing sanctions available for failure to "provide or permit discovery," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"). The exclusion sanction "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56." Fed. R. Civ. P. 37 Advisory Committee Note (1993).

In only two situations is exclusion of the nondisclosed evidence prohibited: (1) where the nondisclosure is "substantially justified"; or (2) where the nondisclosure is "harmless." Fed. R. Civ. P. 26(c)(1); *Contech Stormwater Solutions, Inc.*, 534 F. Supp. 2d at 623. In *Southern States Rack & Fixture, Inc. v. Sherwin Williams Co.*, the Fourth Circuit articulated a five factor test for determining "whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) analysis." 318 F.3d 592, 597 (4th Cir. 2003). The five *Southern States* factors are: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* Application of Rule 37(c)(1)'s exclusion sanction "does not require a finding of bad faith or callous disregard of the discovery rules." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011) (citing *Southern States*, 318 F.3d at 598).

I find first that, were Dr. Piver permitted to testify as to any opinion he may have formed regarding a causal connection between the motor vehicle accident and Joshua Osunde's death, the substance of his testimony would come as a surprise to Defendant. At his deposition, Dr. Piver indicated that he had no opinion regarding the cause of Joshua Osunde's death. *See* Piver Dep. 45:13–15. In his May 13, 2011 report, Dr. Piver expressed no opinion on the specific cause

of Joshua Osunde's death.  *See* Piver Rep. 1.  Rather, Dr. Piver opined only that Joshua Osunde's premature delivery—and not his death four months later—was the result of the motor vehicle accident.  *See id.*; *see also Southern States*, 318 F.3d at 598.  Second, Defendant would be unable to cure the surprise.  Importantly, "the ability to . . . cross-examine an expert concerning a new opinion at trial is not the ability to cure."  *Southern States*, 318 F.3d at 598 (internal quotation marks and citation omitted).  Rather, "the rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts."  *Id.* (internal quotation marks and citation omitted).  Such examination would not be possible if Defendant first learned the substance of Dr. Piver's testimony at trial. *See id.*  Moreover, Plaintiffs' counsel have advised me that Dr. Piver will not be available to testify at trial because he is terminally ill.  *See* Mar. 12, 2012 Telephone Hrg. Mins. 1, ECF No. 44.  Third, to permit a continuance and the reopening of discovery to flesh out these issues on the eve of trial would be highly disruptive.  *See id.*  Finally, while the evidence goes to an element of Plaintiffs' wrongful death claim, and is therefore important, Plaintiffs have failed to provide an explanation for their untimely disclosure.  *See id.* at 597.  In light of the foregoing, and because reopening discovery or permitting late supplementation would greatly prejudice Defendant, I will, as I announced to counsel in my February 29, 2011 Letter Order, consider only that evidence which had already been produced in discovery and which counsel supplied to the Court in reviewing the present motion, and any evidence containing Dr. Piver's opinion regarding the cause of Joshua Osunde's death will be inadmissible at trial.  I turn, next, to my review of Defendant's motion, considering, particularly, whether Plaintiffs have presented sufficient evidence to create a triable issue of fact with regard to their wrongful death claim.

### C.        Summary Judgment Standard

Summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007). To be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence. *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 535 (D. Md. 2007); *see also Mitchell v. Data Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993). The moving party bears the burden of demonstrating that no genuine dispute exists with regards to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the non-movant, drawing all justifiable inferences in their favor.[7] *Ricci*, 129 S. Ct. at 2677; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

If the party seeking summary judgment demonstrates that there is no admissible evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *Lorraine*, 241 F.R.D. at 535. The existence of only a "scintilla of evidence" is insufficient to defeat a motion for summary

---

[7] In their response, Plaintiffs incorrectly assert that "the motion must be decided in a light more favorable to the Plaintiffs as the non-moving party." Pls.' Resp. 7. It is true that a Court must view "the inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), but once that has been done, the Court must determine whether those facts would entitle the moving party to judgment as a matter of law. The law does not treat motions for summary judgment as disfavored motions, as Plaintiffs imply. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and . . . it should be interpreted in a way that allows it to accomplish this purpose."); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (noting the "affirmative obligation of the trial judge to prevent 'factual unsupported claims and defenses' from proceeding to trial" (quoting *Celotex Corp.*, 477 U.S. at 323–24)).

judgment.  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Instead, the

evidentiary materials submitted must show facts from which the finder of fact could reasonably

find in favor of the nonmoving party.  *Anderson*, 477 U.S. at 251.  To satisfy this burden, the

nonmoving party "must produce competent evidence on each element of his or her claim."[8]

*Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).

A "genuine" dispute of material fact is one where the conflicting evidence creates "fair

doubt"; wholly speculative assertions do not create "fair doubt."  *Cox v. Cnty. of Prince William*,

249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin*, 107 F. Supp. 2d at 671.  The substantive law

governing the case determines what is material.  *See Hoovan-Lewis v. Caldera*, 249 F.3d 259,

265 (4th Cir. 2001).  A fact that is not of consequence to the case, or is not relevant, in light of

the governing law, is not material.  *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

**D.      Plaintiffs' Wrongful Death Claim**

To succeed on a wrongful death claim under Maryland law, a plaintiff who qualifies as a

beneficiary under the wrongful death statute "must show by a preponderance of the evidence that

the conduct of [the] defendant was negligent and that such negligence was a proximate cause of

the death of the decedent."  *Weimer*, 525 A.2d at 554; *United Elec. Light & Power Co.*, 60 A. at

---

[8] Plaintiffs also state the following: "Clearly, the Defendant has rebuffed any attempt to settle
this case because of the belief that the [c]hild's death was not proximately caused by the
underlying accident.  That is a critical material fact towards which the Plaintiffs hold a
diametrically opposed position.  As such, the Court is constrained from granting summary
judgment in this case . . . ."  Pls.' Resp. 7.  The mere fact that the parties disagree as to a material
fact is not enough to merit denial of the motion for summary judgment.  Instead, once the
movant has demonstrated that there is no admissible evidence to support the nonmovant's case,
the nonmovant must "produce competent evidence on each element of his or her claim" to
establish that there is a genuine issue for trial.  *See Miskin*, 107 F. Supp. 2d at 671.  Furthermore,
any reference by Plaintiffs to communications with Defendant regarding settlement as
"evidence" of a genuine dispute of material fact would be quite improper, and inadmissible.  *See*
Fed. R. Evid. 408 (prohibiting the admission of evidence relating to settlement negotiations or
offers for the purpose of proving or disproving "the validity or amount of a disputed claim").

248–49; *see also* Sandler & Archibald, *supra*, at 396 (listing four elements that a plaintiff must prove to succeed on a wrongful death claim: (1) the victim's death; (2) that the victim's death was proximately caused by the negligence of the defendant; (3) that the victim's death resulted in injury to the plaintiff, who falls within the category of beneficiaries defined by the statute; and (4) that the claim is brought within the applicable statutory period); Md. Code Ann. Cts. & Jud. Proc. § 3-904(a) (defining the class of beneficiaries who may recover for wrongful death).

Defendant has stipulated "that she was negligent and that her negligence was the sole cause of the accident." Joint Final Pretrial Order 2.   However, Defendant disputes that her negligence, and the ensuing accident, were the cause of Joshua Osunde's death, nearly four months after his premature birth.   *See id.*   Plaintiffs, as the nonmoving party, must "produce competent evidence on each element of [their] claim" to survive the motion for partial summary judgment. *Miskin*, 107 F. Supp. at 671.   As I explain below, Plaintiffs are unable to establish the causation element of their wrongful death claim with specific facts that would be admissible at trial.   Specifically, Plaintiffs have failed to supply expert testimony regarding causation, which is necessary here.[9]   Because Plaintiffs cannot establish a prima facie case for wrongful death under Maryland law, and because "[i]t is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial,'" the motion for partial summary judgment must be granted.   *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

---

[9] I note that, even if expert testimony were not required, Plaintiffs have failed to provide any admissible evidence linking the motor vehicle accident to Joshua Osunde's unfortunate death.

### 1.      Proximate Causation

To establish "causation in the face of a summary judgment challenge, evidence which amounts to a probability, not just a possibility, must be identified by the non-moving party, to guard against 'raw speculation' by the fact finder." *Miskin*, 107 F. Supp. 2d at 671–72; *see Sakaria v. TWA*, 8 F.3d 164, 172–73 (4th Cir. 1993) ("In a long line of decisions in this circuit we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility.' Where, as here, resolution of the causation issue is dependent upon expert opinion, it must meet [the] standard of probability]."); *Peterson*, 264 A.2d at 855 ("[T]he plaintiff produces legally sufficient proof to get to the jury [by circumstantial, rather than direct evidence] once he shows it is more probable than not that defendant's act caused his injury.").

Under Maryland law, to establish that Defendant's negligence was a proximate cause of Joshua Osunde's death, Plaintiffs must show that "there is a reasonable connection between . . . Defendant's . . . negligence and . . . Plaintiff's injuries," resulting in death. *Wash. Metro. Area Transit Auth. v. Reading*, 674 A.2d 44, 52 (Md. Ct. Spec. App. 1996). A reasonable connection sufficient to establish proximate cause exists "'where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury [or death], so that one may be regarded by persons of ordinary judgment as the logical and probable cause' of the injury." *Vito v. Sargis & Jones, Ltd.*, 672 A.2d 129, 139 (Md. Ct. Spec. App. 1996) (quoting *Lashley v. Dawson*, 160 A. 738, 743 (Md. 1932)); *see also Reading*, 674 A.2d at 52 ("Even if the defendant's breach were a cause, in fact, of the injury, there is no liability if a third party's actions, or the plaintiff's own actions, constitute an intervening, superseding force that interrupts the chain of causation." (citing *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 642 A.2d 219, 229–32 (Md. 1994))). In other words, to establish proximate causation, Plaintiffs must

show that Defendant's negligent conduct "'actually produced'" Joshua Osunde's death. *Marcantonio v. Moen*, 959 A.2d 764, 775 (Md. 2008) (quoting *Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970)); Sandler & Archibald, *supra*, at 396 ("To demonstrate proximate cause [in a wrongful death action], the burden is on the plaintiff to prove by a preponderance of the evidence that it is more probable than not that the defendant's act caused the injury.").

Defendant argues that Plaintiffs have failed to establish—through expert testimony or otherwise—that Defendant's negligence, resulting in the motor vehicle accident, was the proximate cause of Joshua Osunde's death four months later. *See* Def.'s Am. Mot. ¶ 8.  In its motion, Defendant correctly notes that expert testimony is required to establish causation in this case, as the cause of Joshua Osunde's death is a "complex medical question." *Id.* ¶ 8.  As I explain below, Defendant has failed entirely to present to the Court any expert testimony establishing a causal link between the motor vehicle accident and the child's death.

### 2.     The Need for Expert Testimony

Expert testimony is not necessary to establish that which "jurors, as ordinary [citizens], would be aware of, as a matter of general knowledge." *Babylon v. Scruton*, 138 A.2d 375, 379 (Md. 1958); *Wood v. Toyota Motor Corp.*, 760 A.2d 315, 319 (Md. Ct. Spec. App. 2000).  Thus, there are "'many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony.'" *Greater Metro. Orthopaedics, P.A. v. Ward*, 810 A.2d 534, 538 (Md. Ct. Spec. App. 2002) (quoting *Wilhelm v. State Traffic Safety Comm'n*, 185 A.2d 715, 719 (Md. 1962)).  This is particularly true "'when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the

circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge or observation.'" *Id.* (quoting *Wilhelm*, 185 A.2d at 719).

Where, however, "'the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact[-]finding which properly falls within the province of medical experts . . . proof of the cause must be made by such witnesses.'" *Id.* (alteration in original) (quoting *Wilhelm*, 185 A.2d at 719). Indeed, the notion that "complicated issue[s] of medical causation" require expert testimony is well established in Maryland law. *See Giant Good, Inc. v. Booker*, 831 A.2d 481, 488 (Md. 2003); *see also John Crane, Inc. v. Linkus*, 988 A.2d 511, 522 (Md. Ct. Spec. App. 2010) ("[E]xpert testimony is required to establish causation when the 'subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman.'" (quoting *Wood v. Toyota Motor Corp.*, 760 A.2d 315, 319 (Md. Ct. Spec. App. 2000))). In a number of cases, Maryland courts have found that expert testimony is required to establish a causal link between negligent conduct and a remote injury occurring sometime thereafter. *See, e.g.*, *Craig v. Chenoweth*, 194 A.2d 78, 79–80 (Md. 1963) (finding that expert testimony was necessary to establish the causal connection between a rear-end collision caused by the defendant's negligence and the partial paralysis of the left hand first experienced by the plaintiff approximately six weeks later); *Desua v. Yokim*, 768 A.2d 56, 59–62 (Md. Ct. Spec. App. 2001) (finding that expert testimony was necessary to establish the causal connection between a rear-end collision caused by the defendant's negligence and the plaintiff's soft tissue neck injury, which was diagnosed eighteen days after the accident); *Strong v. Prince George's Cnty.*, 549 A.2d 1142, 1145 (Md. Ct. Spec. App. 1988) (finding that expert testimony was necessary to establish the causal connection between an automobile accident caused by the defendant's negligence and the plaintiff's pancreatitis, which he developed several months later).

In the present case, according to the facts presented, when viewed in the light most favorable to Plaintiffs, the motor vehicle accident caused by Defendant's negligence resulted in personal injuries to Mrs. Osunde and the premature delivery of Joshua Osunde by caesarian section.  *See* Piver Rep. 1.  But, as the cases described above illustrate, expert testimony is required to causally connect an incident involving a plaintiff and a non-immediate, late-onset injury experienced by that same plaintiff.  I find that here, too, expert testimony is required to causally connect the motor vehicle accident to Joshua Osunde's death, as Joshua Osunde was not yet born at the time of the accident, and his death occurred more than four months after the accident and his subsequent delivery.  *Cf., e.g.*, *Superior Transfer Co. v. Halstead*, 56 A.2d 706, 706–08 (Md. 1948) (requiring expert testimony to establish the causal link between a motor vehicle accident causing injury to the pregnant plaintiff and her delivery, several weeks later, of a stillborn infant, whose cause of death was determined to be body maceration and absent brain tissue); *Abend v. Sieber*, 158 A. 63, 63–65 (Md. 1932) (requiring expert testimony to establish the causal link between an accident causing injury to the pregnant plaintiff and the discovery, more than a month later, that the pregnancy was an "abdominal pregnancy," requiring the removal of the fetus, and resulting in the fetus's subsequent death).

I am persuaded that the four month period between the motor vehicle accident and Joshua Osunde's death,[10] and the fact that questions related to injuries sustained by an infant while in

---

[10] This is not, as Plaintiffs would have the Court believe, a case "where there is a complete continuance and unbroken sequence between the [accident] and [the death], so that one may be regarded by persons of ordinary judgment as the logical and probable cause" of the other.  *Vito*, 672 A.2d at 139 (internal quotation marks and citation omitted); *see* Pls.' Resp. 4.  It is undisputed that four months passed between the motor vehicle accident and the child's death. With the exception of a largely uninformative summary of hospital charges, *see* Hosp. Charges Summ., Plaintiffs present no evidence detailing Joshua Osunde's condition during that period. Moreover, as Defendant notes, the evidence produced suggests that Plaintiffs' infant son died at home "almost two months after his last overnight stay in [the] hospital."  Def.'s Reply ¶¶ 10–11.

the mother's womb, or caused by the infant's premature delivery, are "beyond the ken of the average" juror, renders the causation issue in this case a "'complicated medical question'" requiring expert testimony. *See Ward*, 810 A.2d at 538 (quoting *Wilhelm*, 185 A.2d at 719); *Wood*, 760 A.2d at 319. As I explain below, Plaintiffs have failed to provide such evidence.

### 3.   Discussion

As described above, Plaintiffs' expert, Dr. Piver, indicated in his deposition that he has no opinion on what caused the death of Joshua Osunde four months after the motor vehicle accident. *See* Piver Dep. 45:5–12. Moreover, the opinions expressed by Dr. Piver in his May 13, 2011 report address the cause of Joshua Osunde's premature birth; they do not address the cause of his death. *See* Piver Rep. 1–2. Plaintiffs have provided the Court with no admissible evidence—expert testimony or otherwise—that links Joshua Osunde's premature birth, or even his diagnosis with RDS, to his death. Indeed, Plaintiffs have presented no evidence to this Court that establishes the cause of the child's death. Plaintiffs' statement in their response that the cause of Joshua Osunde's death was SIDS, without citation to the record, or without reference to an attached evidentiary exhibit, is not enough. *See* Pls.' Resp. 3; *see Miskin*, 107 F. Supp. 2d at 671–72 (stating that, to establish "causation in the face of a summary judgment challenge," the nonmoving party must identify admissible "evidence which amounts to a *probability*, not just a possibility" that the moving party's conduct was the cause of the nonmovant's injuries (emphasis added)); *Sakaria*, 8 F.3d at 172–73 (explaining that, where "resolution of the causation issue is dependent upon expert opinion, it must meet [the] standard of probability").

Perhaps in recognition of this flaw, Plaintiffs further state that Dr. Piver, as well as Plaintiffs' two treating physicians, will testify at trial "about the causal connections between

RDS and SIDS as has been indicated by easily available medical literature."[11]  *Id.*  Even if

Plaintiffs had presented evidence establishing that the cause of Joshua Osunde's death was SIDS,

because I am reviewing the present matter as a motion for partial summary judgment, Plaintiffs

must do more than assure the Court that evidence relating the child's pre-delivery diagnosis to

the ultimate cause of death will be provided at trial.  Rather, Plaintiffs were directed to submit

evidentiary materials showing facts from which the finder of fact could reasonably find in their

favor.  *Anderson*, 477 U.S. at 251.  They have failed to do so.[12]  Because the cause of Joshua

---

[11] The "easily available medical literature" to which Plaintiffs refer is a snippet from what appears to be a 1996 article, for which no author is listed, and which is posted on a website titled "What Doctors Don't Tell You."  The full article may be viewed only by becoming a member of the website.  *See* Pls.' Resp. 3 n.3 (citing *New Sids Link: Lack of Iodine*, What Doctors Don't Tell You (Feb. 1, 1996), http://www.wddty.com/new-sids-link-lack-of-iodine.html).  The same reasons which required me to disregarded Defendant's citation to unauthenticated website information prevent me from considering the similarly unauthenticated articles cited by Plaintiffs.  *See supra* note 6.  There has been no showing by Plaintiffs that the online article can be presented as admissible evidence at trial.  *See* Fed. R. Civ. P. 26(c)(2).

[12] None of the documents attached as exhibits to Plaintiffs' Response indicate that Defendant's negligence was the cause of Joshua Osunde's death.  In the interest of completeness, I will comment on each exhibit briefly.  Exhibit A, the neonatal report, indicates only that Joshua Osunde required resuscitation upon birth, and that he was diagnosed with RDS.  *See* Neonat. Rep. 1.  As it was prepared prior to the child's death, standing alone, it provides no information on the cause of death.  The exhibit was presumably included to support Plaintiffs' argument that Joshua Osunde's premature birth, resulting in his diagnosis with RDS, led to his death, which they allege was caused by SIDS.  *See* Pls.' Resp. 3.  Crucially, however, no additional evidence has been supplied establishing that the cause of Joshua Osunde's death was SIDS.  Moreover, Plaintiffs have not supplied any evidence that affirmatively establishes a connection between Joshua Osunde's diagnosis with RDS and his death.  *See Coleman v. United States*, 369 Fed. App'x 459, 461 (4th Cir. 2010) ("The nonmoving party may not rely on . . . conclusory allegations to defeat a motion for summary judgment.").  Exhibit B, the summary of hospital charges, is uninformative on the issue of causation.  It lists only the medical services that the child received; it does not list dates for those services, nor does it elaborate on the necessity of those services in light of the RDS diagnosis.  *See* Hosp. Charges Summ 1.  I have discussed Exhibit C, Dr. Piver's report, at length.  In short, while the report offers an opinion on the cause of Joshua Osunde's premature delivery, it does not offer an opinion on the cause of his death four months later.  *See* Piver Rep 1.  The fact that the infant was born prematurely as a result of the accident does not, without additional information, suggest that the accident was the probable cause of his later death.  *See Miskin*, 107 F. Supp. 2d at 671–72; *Sakaria*, 8 F.3d at 172–73. Finally, Exhibit D is the first page of Dr. Piver's article addressing trauma and its effects on the

Osunde's death, relative to the motor vehicle accident, is a complicated medical question requiring expert testimony, and because Plaintiffs have failed to supply any such evidence, Plaintiffs are unable to establish the proximate cause element of their wrongful death suit.  *See Miskin*, 107 F. Supp. 2d at 671 (noting that, to survive a motion for summary judgment, the nonmoving party "must produce competent evidence on each element of his or her claim"); Lynn McLain, 5 *Maryland Evidence, State & Federal* § 300:7 (2d ed. 2001) ("If the trier of fact could not reasonably infer a fact essential to a party's charge, claim, or defense without favorable expert testimony, the party will fail to meet its burden of production if it fails to produce adequate expert testimony.").  As a result, Plaintiffs are unable to establish a prima facie case for wrongful death under Maryland law.  Therefore, insofar as Defendant's motion *in limine* is construed as a motion for partial summary judgment, summary judgment is GRANTED in Defendant's favor.  Plaintiffs may not present their wrongful death claim at trial.  Rather, Plaintiffs will proceed at trial only on their negligence and loss of consortium claims.  Reference will not be made at trial to the stricken cause of action, or to the death of Plaintiffs' infant child. Because I find that Plaintiffs have failed to establish the causation element of their wrongful death claim, I need not consider whether Plaintiffs' complaint could properly be construed as having pleaded both a wrongful death and a survivorship claim, as a lack of causal evidence is fatal to both claims.  *See* Sandler & Archibald, *supra*, at 396, 404 (citations omitted).

---

female reproductive system in pregnancy.  *See* Piver Art. 1.   Plaintiffs have included this exhibit to demonstrate that "Dr. Piver is well qualified to opine on [this] subject based on his education and training, including his authorship" of the attached article.  Pls.' Resp. 5.  It is possible, of course, that Dr. Piver expounds on the relationship between RDS and SIDS in this article, but because only the first page of the article is supplied, and because no reference is made on that page to such a connection, the exhibit is uninformative on the issue of causation.

### III.    CONCLUSION

For the reasons stated above, Defendant's Motion *in Limine*, construed as a motion for partial summary judgment as to Plaintiffs' wrongful death claim, is GRANTED.    Evidence relating to the death of Plaintiffs' infant child four months after the accident will not be introduced at trial.  This is a definitive ruling made pursuant to Fed. R. Evid. 103(b).

Dated: <u>March 15, 2012</u>                                          <u>_____/S/_____</u>
                                                                    Paul W. Grimm
                                                                    United States Magistrate Judge

hlw